May it please the court, I'm Jennifer Gilg for the appellant in this matter, Matthew Rouse. Matthew Rouse was indicted on child pornography charges for a handful of videos that he made with his then 16-year-old girlfriend, of the two of them having sexual relations. The young woman, who we call B.A. in the brief, is of the age of consent. She consented not only to the sex, but to the videos and even used her phone on occasion to record. She sent her own photographs to the defendant. The two only exchanged those images privately. They did not disseminate them outside of the relationship. So in this respect, they were acting in a way and engaging in conduct that is prevalent in this country, especially among teenagers. But the difference is that my client, Mr. Rouse, is now going to spend eight years of his life in prison for this conduct. We're arguing in this appeal that the statutes, as applied to Mr. Rouse's conduct, violate his First Amendment right to free speech and his Fifth Amendment right to sexual privacy. So we're asking that the court reverse the decision of the district court, which declined to dismiss the charges against Mr. Rouse. As in my brief, I want to start with the First Amendment issues. I think the government is convinced that this is categorically excludable speech from the age of 18. If I can convince you of nothing else today, I hope that I can convince you that you've already rejected that argument in a decision that Mr. Norse and I argued a few years ago. That's United States versus Anderson. Because Anderson recognized that the driving force behind prohibiting child pornography is the sexual abuse that underlies it. That the sexual abuse that is part of the conduct and that is illegal in and of itself is the reason that the speech is prohibited. So if you don't have sexual abuse, you don't have categorically excluded speech. You still have protected First Amendment speech. So in this case, there was no abuse. The young woman was able to make her own decisions about engaging in this conduct. And she did voluntarily consent to this conduct. So the underlying conduct was legal. Therefore, the speech remains First Amendment protection. It retains its First Amendment protection. And the only way that this prosecution is legal under the Constitution, then, is if it meets the strict scrutiny standards. There has to be a compelling justification for this restriction. And this has to be the only way you can really attack the problem. And here- Well, going back to the categorical question. Now, Anderson, of course, didn't involve a nude minor. That's correct. And this case does. So- But again- To accept your position, we'd have to go beyond Anderson and say, if the minor can consent to the activity under state law, then the photography of her is protected? You have to say, then, there is no sexual abuse. So it's not categorically outside of the First Amendment's protections. So the same in Anderson. There was the actual bodies in the photograph. But is the abuse the creation of the images or the sexual activity? I think it's the sexual activity. I think that's the way that the court has always analyzed these cases, is does it link to an underlying criminal offense? But if you just take a photograph of a nude minor, that becomes child pornography, even if there's no sexual activity. Because the child- Well, assuming the child is under the age of consent and there is actual abuse, then yes. Well, what do you mean, and there's actual abuse? Well, the court assumes there's abuse, because that person can't consent. OK. So in this case, the state of Nebraska has decided that the sex itself can be consensual, and we have facts here that show that it was. So the underlying conduct is the sex, not the photographing of the sex. Because frankly, if you add in the photographing, I think it really begs the question. And so I mean, yeah, the photographing would, I mean, I think the government wants to say the photographing itself is illegal. So we're taking a photograph of photographing. But that's, I mean, the photographing, even in Nebraska law, would be, I think, constitutionally suspect, because of the same factors we have here. So I don't see any support for defining the underlying conduct here as including the making of the image. The image is- Is making the image, not having sex with the girl. I guess what I'm saying is the underlying crime, when we talk about the underlying crime, having to be criminal in order for it to be, or the underlying act has to be criminal in order for it to be categorically excluded for First Amendment protection, I would say the underlying act is the sex, which in this case was perfectly legal. What's the underlying crime when there is no sexual act? There's just a photograph of an- Well, that's still sexual abuse if the person is below the age of consent. But what's the under-year model of analysis that you say we have to look at whether the underlying- Right. It would be child exploitation, forcing the child to be a subject of- Sexually explicit image, that's abusive of itself. Why isn't that the situation here, forcing her to be a subject of the image? Because he didn't force her to do anything, because she agreed to it, and because she agreed to the sex, so there's no abusive element. Well, are you sure in all the other cases the child didn't, quote unquote, agree to be photographed? I can't say- Does it really turn on whether the child agrees to be photographed? Well, I think when there's an age of consent issue, the question, and the We look to whether or not there was underlying abuse, so- You mean you think age of consent to engage in sexual activity brings along some notion of consent to be photographed? I actually do, but I don't think- I mean, basically I think that I'm just trying to focus the court's attention here on the fact that it's not categorically outside of the bounds of the first amendment. Right, no, that's what I'm trying to . . . that's the point of my questions, is to figure out whether that's correct, and to be categorically . . . Isn't that right? Isn't that what the cases have said so far? I think what you said in Anderson, and what was emphasized in Stevens, is that there has to be abuse. There has to be some kind of exploitative element, and that, I think, assumes no consent, if the woman is of the age of consent. Since we have the consent here, and because she is able to make the decision to engage in the underlying act, then we don't have categorically excluded child pornography. Now, that, of course, leads to the question, is this still a legitimate use of . . . to serve a compelling interest, and is it narrowly tailored to that interest? And, I think the government loses on that as well. I hope that I can convince you to look seriously and closely at the interest that they are going to advance, which is that we have to protect even 16-year-olds, even older teenagers, from rash decisions. The fact that they just don't realize that this can cause them reputational harm, and the photograph lives on in spite of the sex, and it's more dangerous, perhaps, even than the sex. I don't think that's actually a compelling interest, because, again, this is the kind of thing that teenagers are doing every day. Statistically, more kids her age are sharing photographs than not. And, in fact, the idea that they don't understand the repercussions of trading these images, I think, really sells them short. I think they understand far more than we do what is going on. There's a reason why kids use Snapchat instead of Facebook. Those images go away shortly after they are received on that medium. So, I've written in my brief, I've discussed some of the articles that show that there's really not a huge psychological harm to most of these kids. But, most importantly, the psychological harm is contingent on further dissemination of these videos. And there was no dissemination here, and Ashcroft versus Free Speech Coalition says that we don't have a compelling interest if it's contingent upon some future criminal act. So, for both of those reasons, I think we don't have the compelling interest. And, assuming we did, it would still not be a narrowly tailored approach to that problem, just by sending someone to jail for eight years for privately disseminating it. There are a lot of other, less restrictive means of addressing the same problem. You can draft the statute so that it excludes privately exchanged videos. But, if it's disseminated beyond that, then that's distribution. There are civil remedies. There are revenge porn laws. If Mr. Anderson were to, or Mr. Rouse, were to later disseminate this, it could become criminal in many ways. But, the acts here, I think, fall outside of a narrowly tailored approach to addressing the interest, which I still think is overstated. How much of a sentence did Mr. Rouse get here?  So, on these facts, he's incarcerated for 96 months? Yes. But, you're not raising a sentencing issue, you're just raising a... No, Your Honor, that was... To the conviction, right? Right. And, actually, that was an agreement, part of a plea agreement, because, frankly, the guidelines would direct a much higher sentence. So, again, they don't seem to be really tailored to this kind of conduct. Because, I think, when Congress had... Congress has the more traditional type of child pornography in mind when it drafted these statutes. And, it drafted these statutes way before the prevalence of cell phones and sexting and all of the things that, I think, changed the calculation as to whether or not we're really dealing with a compelling interest here. Enough of an interest to allow this prosecution to be the only way we can deal with sharing of images like this. I just want to mention really quickly that the second part of our brief addresses the due process argument. I think that's the argument where you would be making some new ground if you did recognize a privacy interest between these two people, both in engaging in the sexual conduct and, as part of that, deciding to take a photograph. I would argue that the language in Lawrence talks about sexual practices of their private intimate relationships. It talks about it in such a way that I would think would incorporate the photographs themselves as part of what would be protected under Lawrence. And, nothing this court has decided yet has excluded a minor, a relationship between a minor and adult entirely. The decision, I don't know if this is the way to pronounce it, but I'm a musician, so I'm going to call it BACH, United States versus BACH, B-A-C-H, does address the Lawrence argument and say that there was a minor involved there. And, in BACH, the court recognized that Lawrence didn't involve a minor, but it did not say there was no privacy involved if there's a minor involved. It simply looked at the facts of that case and decided there was no privacy protection in that case. So, you wouldn't be going against anything you've already held to recognize a privacy interest here within that relationship and including the videos that they took. And, with that, I will reserve the rest for my rebuttal. I don't think you had any time left, but we'll see when we finish here. Mr. Norris, we'll hear from you. May it please the court, I'm Michael Norris and I represent the appellee of the United States. The district court properly dismissed Rouse's First and Fifth Amendment challenges to the indictment, an indictment that charged him with the production of child pornography and also charged him with the distribution of child pornography. We are asking that you affirm the decision of the district court. To whom did he distribute it? He distributed it to her. They distributed it back and forth. Charged him with distributing it to the girl? I did. I did. And there were reasons for that. First of all, it fit within the elements of the crime. Secondly, it helped to effectuate a sentence that ultimately ended up being the sentence that was imposed. Now, yes. The, the, what do you, the, what he was sentenced to? Was that your last remark there? Yes. He was sentenced to the distribution of child pornography. That's why the eight year, the production. That's a lower sentence than production? It is. For 12. The production would have carried a mandatory minimum of 15 years. Yeah. So what Rouse is asking you to do and what he asked the district court to do is to ignore two bedrock principles involving the child pornography laws and both the First Amendment and the privacy right of the Fifth Amendment. First and foremost, the First Amendment does not prevent prosecutions for child pornography offenses involving actual minors. Actual minors have been categorically excluded from the protection of the First Amendment. It's categorically unprotected speech. Second, activities relating to child pornography are not protected by a constitutional right to privacy. Not only has the Supreme Court in Lawrence indicated that this does not extend to juveniles. This court later in Vincent indicated again that line in the sand between what happens in private between two consenting adults and what happens when a minor is involved. What about when the state says the minor can consent as though she's an adult? That's the twist in this case. It's not unique to this case. As this court is well aware, I think each of you has authored or at least been on an opinion in which a 16 year old consented to sexual relations and yet that activity was videotaped. It starts with Bach. It goes on to Stringer. There's the Goodwin case. The Ninth Circuit has a case, Lawrence. All of this comes up in the context of a state consent law. And there's plenty of law that says that the state does not overrule what the age of majority is or what the definition of a child is under federal law. So the relationship is, as a matter of fact, it's immaterial. Rouse was engaged in a legal sexual relationship. It may not be one that the parents would have agreed to. It may not be one that society really feels great about. But it was one that was a legal sexual relationship. The problem is, that's not what he's charged with. That's not the crime. The crime is producing child pornography and the crime is then turning around and distributing that child pornography. So that legal relationship, recognized as legal under the law in the state of Nebraska, as well as under federal law for that matter, what they did in the hotel room, other than when they decided to take the cameras out and start taping, and then distributing that child pornography, that is where it becomes illegal. I think the best quote with regard to this is United States v. Larson. It's at 847 F. 3rd, 1034. It's the Ninth Circuit case where the court said while the sexual relationship was legal, the production of child pornography stemming from that relationship was not. That's exactly the case that we have here. What they did was otherwise legal, not prosecutable under the laws of the state of Nebraska. But once they started producing child pornography, once he started suggesting that they film it, that they continue to film it, that he distributed it to her, and plus she also distributed some images of herself back to him during the course of the relationship that was unrelated to what was happening in the hotel. Was there any evidence that it was distributed to anyone except back and forth between the two of them? There was no evidence that it was distributed back and forth to anybody outside of the relationship, but that's based upon his denial that it happened, so that may or may not be true. But whether it was or wasn't distributed outside of the relationship is immaterial. So he could have brought it to the cloud, in which case he could have distributed it later. He could use it for all sorts of nefarious purposes that would get into a strict scrutiny analysis if we got to a strict scrutiny analysis. One of the things that he could have done is he could have continued to use his power over this relationship, a power that a 38-year-old man has over a 16-year-old high school student. When she decides that she doesn't want to further this relationship, he could have used those videos to do any number of things that are fairly common. That one would be, I'm going to show your parents. The more likely one is, I'm going to show your friends at school. Or done something along those lines in order so that he could further the sexual relationship that would have been otherwise legal. It's the emotional distress that could happen to a child. It is the psychological distress that can happen to a child in these circumstances. This is what sextortion, this is what revenge porn, this is what Congress can address in order to protect children. And again, she's 16. None of that happened here, though. Doesn't mean it wouldn't have happened. Doesn't mean it couldn't have happened. If he had done that, he could have been charged with those crimes. He could have been charged with those crimes had it got to that point. But Congress has the ability and Congress has the right to set laws that protect minors. And in protecting minors, Congress is well aware, I'm sure this court is well aware, having seen cases like this where children who start to give a picture to somebody, a stranger on the internet, all of a sudden get asked, well, you need to send me something more. Or you need to send me something that's nastier. And if you don't, I'm going to share this. That's the typical sextortion that you see in many of the production cases that have been before this court in the Eighth Circuit. How did this case come to law enforcement's attention? It came to law enforcement's attention because the father found out. And so Mr. Rouse was at least 38. He was a sergeant in the National Guard. The father or the parents discovered the relationship. They went both to the National Guard and they went to the police department. And as soon as they did that and Mr. Rouse discovered that, he deleted the images of the videos involving the two. So the videos that formed the basis of this prosecution came directly from the phone of the minor, the 16-year-old high school student. Go ahead. You said something. So all those hypotheticals you gave couldn't have happened here because he deleted the images. There was no way. It depends on whether he has a cloud account. And we have no way of knowing whether he's got a cloud account or whether he backs it up to some other images or devices. This is the way that things work. You don't have an FBI can't find that out? Depends on whether or not it was on the phone and what was deleted on the phone. I can't answer that directly. Yes, if it was on the phone, they could probably find that out. If it was transferred to another device and that device had cloud access, it would be something completely different. This was a state patrol case as opposed to an FBI case. Their resources would be somewhat more limited, although that really shouldn't make much of a distinction today. Yes. My comment was that you talked about what Congress has the authority to do. And the authority, of course, that Congress has is somewhat limited by several sections of the United States Constitution. True. And I think that's kind of an issue here. But you were talking on page 11 of your brief, there is this language. Although Rouse's consensual sexual conduct with a 16-year-old girl in and of itself could not be prosecuted in state or federal court, his production of child pornography productions are separate crimes for which he could be prosecuted in both sovereigns. Yes, Your Honor. That seems, you know, in some sense sort of nonsensical. I mean, depending upon the facts, depending upon the, as in every kind of a crime, the facts of each one. But you have this young man who is a National Guard sergeant confined for, what now, 12 years, 96 months, for something that seems to some people at least a fairly innocuous criminal offense, if it is a criminal offense. That's a little troublesome to me, to be honest with you. Okay. And I'm sure that whether it's 8 years or 12 years is not- Beg your pardon? It's 8 years that he's executing, and I'm sure that he's going to serve- Yeah, you're right, 8 years, 96 months. And I'm sure your point is well taken, that whether it's 8 or 12 really doesn't make a difference. It's a lot of time that somebody's going to serve. But nonetheless, it is a crime that he committed. It is a crime against the United States. It violates the child pornography laws. He could have been prosecuted in state court as well. In fact, he was originally arrested in state court for this same offense. And the point of the sentence from the brief was that this is the crime. The crime is the child pornography. Just as it said in Lorson, it's the production of the child pornography that stems from the relationship. So the state law that you reference also uses an 18-year cutoff? It does, if you're an actor. If you're an actor in the crime or in the conviction. Is it irrelevant? Is it virtually identical then, or maybe it is identical to the federal law? It's not quite. You couldn't lay them over each other and be the same. But for the most part, the same conduct can be addressed in both sovereigns. So both use 18? Both use 18, as I understand it. In this Larson case that you quoted from, what did the defendant do with the images? They didn't share it. Larson is? Pardon me? They did not share it. Who's they? The filmer and the participant. So in Larson, again, it's. . . What court was that from? Ninth Circuit. And it was, when I say they didn't share it. . . No, I said what did the defendant do with the images? You said they. I don't know who you mean by they. I'm asking what did the defendant do with the images? He did not share it outside of the relationship. He shared it within the relationship. He distributed it to the. . . 16-year-old. You also have a litany of cases within this court, this circuit. Whether it be Bach, that seems to be factually indistinguishable here. There you had, I believe it was a 43-year-old and a 16-year-old that was. . . The relationship was consensual. And this court found that it was not a violation of the First Amendment. That it was protected. . . I'm sorry, not protected speech under the First Amendment. And also did not violate his rights under the Fifth Amendment. Privacy rights. You had Stringer, which was a consensual relationship between a 33-year-old and a 15-year-old. The 15-year-old having been emancipated. And this court was very clear that emancipation is not a defense to a child pornography crime. You had Goodwin, which is fairly recent. I believe it was 2017. And in Goodwin, although that was not a child pornography case. It had to do with sex traveling. The child was 17. Still a minor. Still being transported across state lines. And First Amendment protection was categorically excluded in that particular case. Because it still had to do with a federal crime. So with that, I see that my time is running out. And I appreciate this. I'm asking you to affirm the decision of the district court in denying the motion to dismiss. Based on the First and Fifth Amendment challenges. And unless there are any other questions, I'll wrap up. Thank you. All right. Ms. Gill, go ahead for you in rebuttal. You did have some time left. All right. 15 seconds. Let me put one minute on. Thank you, Your Honor. I think the government just made my case for me on strict scrutiny. He listed a number of things that the Congress would be able to do to address the specific problem. The specific worry here that those photos would, or those videos would line up in the wrong hands. And be distributed to other people. That shows that this cannot be a narrowly tailored statute. And again, we don't think that it falls within categorically excluded child pornography. What about these other cases that have applied the categorical rule? He says notwithstanding emancipation or consent. Those were basically arguments that they didn't meet the elements of the statute. Because of the age of consent. There were no constitutional arguments made in Stringer. In Goodwin, there was a question of whether the conduct was lawful or unlawful. There was actually another statute which would make the conduct itself unlawful. So the speech connected to it fell within that well-known category. Speech integral to criminal conduct. Oh, that's that. Yeah. I remember that. That was a tough case. That speech integral to criminal conduct. Go ahead, Judge Shepard. What about Bach? Very similar. Same arguments. Well, I think there are two images at issue in Bach. The morphed image they found because there was a child. An actual child posed. I believe the child was 14 in a sexual manner. There was an element of abuse there. So the morphed image was, I guess, traditional child pornography in that it was categorically excluded. As to the images taken with the person of the age of consent in Bach, that was 10 years before Stevens. So they were still applying a fairly loose definition of child pornography that did not focus in on whether there was an underlying crime. Well, you still have the holding that congressional choice to regulate child pornography by defining minor as an individual under 18 is rationally related to the government's interest in enforcing child pornography law. Right, but you don't apply a rational basis test if you have protected speech. And the Bach decision basically said we don't have protected speech here. But that, I would argue, is the problem because when you look at what Stevens says, then the image was still protected. The question would become whether that meets strict scrutiny or not. Thank you for the extra time. We just ask that you reverse the district court. Very well. The case is submitted and the court will file an opinion in due course. Thank you both for the arguments.